FILED

04/25/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 21, 2017

## DAVID ANDREW OLIVER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 106180   Steven Wayne Sword, Judge**

_____

**No. E2016-02244-CCA-R3-PC**

_____

The Petitioner, David Andrew Oliver, appeals the denial of his petition for post-conviction relief in which he challenged his rape of a child conviction and twenty-five year prison sentence.  On appeal, the Petitioner contends that he was denied his right to the effective assistance of counsel, arguing that trial counsel should have advised him to testify at trial.  We affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, David Andrew Oliver.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charme Allen, District Attorney General; and Rachel Russell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Petitioner was convicted of rape of child by a Knox County Criminal Court jury.  The trial court sentenced the Petitioner to serve twenty-five years in prison.

## Trial

On direct appeal, this court summarized the underlying facts of the Petitioner's conviction, as follows:

> [I]n October 2011, the victim's aunt and a female cousin were living in a small house on Boone Street in Knoxville. One night near Halloween, the then twelve-year-old victim spent the night there. The [Petitioner], who was dating the victim's cousin, also spent the night. The victim slept on the living room couch but woke to discover the [Petitioner] staring at her. The [Petitioner] forced himself on the victim, penetrated her vagina with his penis, and ejaculated. About one year later, the victim revealed the incident to a counselor and was interviewed at Childhelp. As a result of the Childhelp interview, officers with the Knoxville Police Department (KPD) began investigating the victim's allegations and interviewed the [Petitioner]. During the [Petitioner's] interview, he admitted knowing the victim and spending the night at the home on Boone Street while the victim was there. The officers suggested to the [Petitioner] that the victim became pregnant and had a baby, which was not true. The [Petitioner] told the officers that he forced the victim to have sex with him, that she tried to fight him off, and that he ejaculated. After the interview, the [Petitioner] wrote a letter to the victim in which he apologized for hurting her. He also wrote that, if she had a baby, he wanted a DNA test to determine if he was the father and wanted to see the baby.

*State v. David Andrew Oliver*, No. E2013-02426-CCA-R3-CD, 2014 WL 12649795, at *1 (Tenn. Crim. App. Nov. 20, 2014), *perm. app. denied* (Tenn. Mar. 12, 2015). Relevant to the issue before this court, the trial court conducted a hearing pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999). During the hearing, the Petitioner testified that he and trial counsel discussed several times whether he should testify at trial, his Fifth Amendment right to remain silent, his ability to fully decide whether to testify, and the advantages and disadvantages of testifying. The Petitioner decided the following day on the second day of trial not to testify. On direct appeal, the Petitioner challenged the trial court's denial of his motion to suppress his confession and apology and the trial court's limitation of his ability to cross-examine the victim. *Id.* at *1-4.

## Post-Conviction Hearing

The Petitioner's amended petition for post-conviction relief alleged that trial counsel was ineffective for failing "to strongly advise him that he should testify at trial, both to explain and rebut the Petitioner's confession, which was introduced in a recorded

statement at trial, and to rebut the victim's testimony." He contended that "not testifying on his own behalf left the State's evidence unchallenged and his own confession unchallenged by the only person who could have explained or challenged it."

At the hearing on post-conviction relief, trial counsel testified that he was not representing the Petitioner at the time that the Petitioner gave his inculpatory statement to police, where he admitted that he sexually penetrated the victim. Trial counsel learned of the statement after the Petitioner told him about it and then obtained a copy through discovery. Trial counsel stated that he reviewed the statement with the Petitioner "in great detail." Trial counsel was provided a copy of the letter of apology that the Petitioner wrote to the victim and a copy of the victim's interview with Childhelp. He explained that he developed a trial strategy to attack the admissibility of the Petitioner's statement to the police and the credibility of the victim's testimony. Trial counsel filed a motion to suppress the Petitioner's statement to police but the trial court denied the motion. He testified that after learning that the Petitioner's statement would be admitted, he decided to attack the reliability of the confession by focusing on the circumstances surrounding the statement, including the Petitioner's inability to handle being pressured and the way the confession was elicited. He explained that "there were many features of the statement's content that suggested that [the Petitioner] was adopting the questions in order to formulate his answers."

Trial counsel stated that the Petitioner was interested in testifying at trial and that they discussed the matter extensively for months, including consulting with the Petitioner's family about testifying. He also stated that the Petitioner's reasons for wanting to testify matched the questions that trial counsel already planned to ask the interrogating police officers and the victim during cross-examination, explaining that the Petitioner wanted to testify to the effect that he gave a false statement due to coercion and a desire to leave the police department. Trial counsel testified that after discussing the issue with the Petitioner, he did not believe the Petitioner should take the stand at trial because the Petitioner was unable to deal with confrontational situations very well. Trial counsel also testified that he was fully prepared to put the Petitioner on the stand in the event that the Petitioner chose to testify. Trial counsel explained that after the first day of trial where all of the State's witnesses testified, including the victim, he did not change his opinion regarding whether the Petitioner should testify. Trial counsel noted that following the first day of trial, he met with the Petitioner at the detention facility and advised the Petitioner to not testify. He stated that the trial court conducted a hearing pursuant to *Momon v. State* to ensure that the Petitioner was aware of his right to testify. Trial counsel testified that, at trial, he cross-examined one of the interrogating police officers but that there were no other witnesses or potential witnesses that could have explained the confession except for the Petitioner. He described the Petitioner as "very intimidated with the idea of testifying" but explained that they worked on his testimony

in the event he decided to take the stand. Trial counsel acknowledged that the Petitioner probably relied on his advice and the advice from the Petitioner's family in making his decision to not testify.

On cross-examination, trial counsel testified that he believed the Petitioner would have a difficult time trying to explain why he confessed and that he was afraid that the Petitioner's "testimony would hurt him more than it would help him in the long run." Trial counsel also testified that his trial strategy would have remained the same in hindsight.

On re-direct examination, trial counsel testified that because the Petitioner had a prior statutory rape conviction on his record, he was concerned that the Petitioner could open the door to questioning about the prior conviction during cross-examination by the State. He stated that after conducting a mock examination of the Petitioner, he did not believe that the Petitioner's testimony at trial would have made a good impression on the jury. Trial counsel did not think that the Petitioner was capable of effectively explaining why he confessed and apologized to the victim. Trial counsel acknowledged that while there were no other witnesses that could testify as to the truthfulness of the Petitioner's statement and apology, trial counsel identified "particular and isolatable discrepancies between" the victim's various statements and testimony and cross-examined the victim on those discrepancies.

The Petitioner testified that he discussed trial strategy with trial counsel on multiple occasions. He also testified that he reviewed some of the recorded interview he had with police but did not get the opportunity to see a copy of the apology letter that he wrote. He stated that during the interrogation by police, he felt under pressure, confused, and frightened. He also stated that one of the interrogating detectives told him that he could not leave the interrogation room until he wrote an apology letter. He testified that only after the police informed him that the victim accused him of rape, did he make his confession. The Petitioner stated that prior to the interrogation, he had been assaulted by a police officer in the past and that he was afraid of the police. He also stated that one of the interrogating detectives gestured his hand over to the gun on his hip when the Petitioner did not "answer his question right away." He testified that the admissions of guilt that he provided the detectives were not true. He also testified that he did not believe he discussed all the details of the interrogation with trial counsel, including that he was scared during the interrogation.

The Petitioner stated that he discussed with trial counsel whether he should testify at trial. He explained that trial counsel informed him that he should not testify because of his low IQ and tough questioning by the State. The Petitioner testified that he did not recall going through a mock examination with trial counsel. He also testified that

ultimately he thought it was best for him to testify so that he could explain why he gave false statements to the police. He stated he did not stay at his girlfriend's house with the victim because it was a bad idea, explaining that he was a registered sex offender and could not sleep at other people's houses. He recalled that the trial court advised him that it was ultimately his decision whether to testify at trial. The Petitioner testified that he decided to not testify based on trial counsel's advice to him.

On cross-examination, the Petitioner testified that trial counsel left him with the final decision as to whether he should testify. He also testified that in addition to trial counsel's advice, he relied on his family's advice not to testify in his decision-making process. He stated that if trial counsel had encouraged him, he would have testified at trial.

In its order denying post-conviction relief, the post-conviction court found that trial counsel was effective in advising the Petitioner on his right to testify. The post-conviction court noted that trial counsel prepared the Petitioner for the possibility of testifying and tested the Petitioner's ability to handle the pressure of cross-examination. The post-conviction court highlighted the Petitioner's testimony where he admitted that he did not handle pressure very well. The post-conviction court found that trial counsel's advice was based in sound strategy and that trial counsel ultimately left the decision of whether to testify up to the Petitioner. Finding no deficiency, the post-conviction court declined to make findings regarding prejudice.

## ANALYSIS

On appeal, the Petitioner argues that trial counsel provided ineffective assistance by advising him to not testify at trial. The State contends that the Petitioner failed to prove that trial counsel was deficient. We agree with the State.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence

- 5 -

contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687. Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). "[W]hen a petitioner has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. "Counsel must conduct appropriate

investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 933.

Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. The Court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable." *Id.* at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. However, the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

At the post-conviction relief hearing, the Petitioner testified that he would have testified at trial if trial counsel had advised him to do so. The Petitioner contends that by cross-examining the detective about his tactics during the interrogation of the Petitioner, trial counsel only allowed the jury to speculate as to why the Petitioner would have falsely confessed instead of affording the Petitioner the opportunity to give reasons for his incriminating remarks. Trial counsel's advice to the Petitioner came after consulting with his family, preparing him to testify, considering his inability to handle pressure, developing alternative strategies to elicit similar testimony, and discussing the Petitioner's right to testify with him. "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable….'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 690)). Even if we were to assume trial counsel should have advised the Petitioner to testify, "[t]he fact that a particular strategy or tactical decision failed does not by itself establish deficiency." *Felts*, 354 S.W.3d at 277 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

Ultimately, the Petitioner acknowledged that he was aware that he was responsible for deciding whether to testify. *Momon*, 18 S.W.3d at 162 ("the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying"). At trial and during a *Momon* inquiry, the Petitioner

acknowledged that he had the right to testify, that it was his decision whether to testify, and that trial counsel discussed with him the advantages and disadvantages of testifying. Being satisfied that the Petitioner was informed of his right to testify, the trial court accepted the Petitioner's decision to not testify. The post-conviction court found that the Petitioner chose not to testify, followed the advice of his family and trial counsel, and never indicated that he wanted to testify. We find nothing in the record to suggest that trial counsel's advice to the Petitioner rises to the level of deficient performance. Accordingly, the Petitioner is not entitled to post-conviction relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE